# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**TINGIA D. WHEELER,**

    **Plaintiff,**

    v.                                                             Case No. 15-CV-95

**CAPTAIN CYNTHIA RADTKE,**
**BRET MIERZEJEWSKI,**
**WILLIAM POLLARD,**
**and WARDEN GARY BOUGHTON,**

    **Defendants.**

## ORDER

The plaintiff, Tingia D. Wheeler, is a Wisconsin prisoner proceeding pro se. I previously granted him leave to proceed on several claims in his second amended complaint. *See* ECF No. 25. The claims arise out of events that occurred while the plaintiff was an inmate at Waupun Correction Institution, and the primary defendants are Captain Cynthia Radtke and Bret Mierzejewski, who were part of the "Gang Intelligence Unit" at Waupun. The defendants have filed a motion to dismiss some of the claims included in the second amended complaint. Although the plaintiff originally filed a brief in opposition to the motion to dismiss, he has since filed a motion in which he asks to withdraw his opposition to the motion to dismiss. *See* ECF No. 93. In this same motion, the plaintiff requests leave to file a third amended complaint. The plaintiff has also filed a motion asking that I screen the third amended complaint pursuant to 28 U.S.C. § 1915A. *See* ECF No. 104. I will grant the plaintiff's motion to withdraw his opposition to the motion to dismiss, dismiss the second amended complaint, and grant

the plaintiff's request to file a third amended complaint. In this order, I will screen the third amended complaint. I also address several other motions filed by the parties, including the defendants' motion to dismiss this case with prejudice as a sanction for the plaintiff's submitting a declaration to the court that, according to the defendants, was obtained through coercion.

## I. SCREENING OF THIRD AMENDED COMPLAINT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 900 (7th Cir. 1997). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass." *Lindell v. McCallum*, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (citations omitted).

To state a cognizable claim under the federal notice pleading system, the plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). It is not necessary for the plaintiff to plead

specific facts and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, a complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Id. (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing *Twombly*, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that: (1) he was deprived of a right secured by the Constitution or laws of the United States; and (2) the deprivation was visited upon him by a person or persons acting under color of state law. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing *Kramer v. Village of North Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004)); *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The court is obliged to give plaintiff's pro se allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

The claims alleged in the third amended complaint arise out of two conduct reports that defendant Cynthia Radtke issued to the plaintiff. Radtke was a captain in the Gang Intelligence Unit at Waupun Correctional Institution. Radtke issued the first

3

conduct report on January 14, 2013. That conduct report, which is #2303800, alleges that an investigation conducted in December 2012 revealed that the plaintiff occupied a leadership position within the Gangster Disciples prison gang at Waupun. Compl. ¶ 42[1]; *see also* Ex. 60.[2] Holding such a position and participating in gang activity is a violation of prison rules. *See* Wis. Admin. Code § DOC 303.24.[3] The conduct report was based on information that Radtke had obtained from three confidential informants, who were themselves inmates at Waupun. The inmates asked to have their identities kept secret because they feared that they would be in danger if it became generally known within the prison that they had given testimony against Wheeler and the Gangster Disciples. The confidential witnesses stated that Wheeler and another inmate, Frederick Jones, were leaders of the gang. On February 4, 2013, following a disciplinary hearing, Wheeler was found guilty of the conduct alleged and sentenced to 360 days of disciplinary segregation. Compl. ¶ 43; *see also* Ex. 60.

The plaintiff alleges that his being charged with and convicted of this disciplinary offense was the result of a plot against him that was orchestrated by the Gangster

---

[1] Citations to the complaint are to the third amended complaint, ECF No. 93-1.

[2] Exhibit 60 is a copy of the conduct report. It is not attached to the third amended complaint, but Wheeler submitted it as an exhibit to the original complaint. *See* ECF No. 10. Because the conduct report is central to the plaintiff's claim and concededly authentic, I may consider it when screening the third amended complaint even though it is not attached to that version of the complaint. *See Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002) (stating that court can, when determining whether complaint states a claim, consider documents referred to in the complaint that are central to the plaintiff's claim and concededly authentic).

[3] The Wisconsin Administrative Code was revised in January 2015. At the time that Wheeler was charged with being a leader of a prison gang, the relevant code provision was § DOC 303.20.

4

Disciples. The plaintiff admits that he was once a member of the Gangster Disciples, but he contends that he had "severed ties" with that gang 16 or 17 years ago. Compl. ¶ 18. However, in April 2012, a member of the gang approached him and invited him to a meeting. Wheeler refused to attend the meeting. The gang member then threatened Wheeler with bodily harm, and the two began fighting. In connection with this incident, Wheeler was issued a conduct report for fighting. Captain Radtke presided over the disciplinary hearing, found Wheeler guilty of fighting, and sentenced him to 180 days of disciplinary segregation.

The plaintiff alleges that, in June of 2012, the Gangster Disciples again offered him a high-ranking position within their organization, but he repeatedly declined to accept the position. Compl. ¶¶ 23–24. The plaintiff alleges that the gang was offended by his refusal to accept the position, and that therefore they decided to "eradicate" or "get rid of" him. *Id.* ¶ 24. The plaintiff alleges that "eradicating" means employing "headbusters" to spread "disinformation" about him to prison administrators. *Id.* ¶ 26. The plaintiff alleges that the headbusters were several inmates who worked in the prison kitchen, including an inmate named Willie G. Steward. *Id.* ¶ 27. According to the plaintiff, the three confidential informants whose statements were used to convict him of being a leader of the Gangster Disciples were headbusters. *Id.* ¶ 43. Thus, alleges the plaintiff, he was convicted on the basis of false testimony. The plaintiff alleges that Captain Radtke had reason to know that he had been targeted for eradication and that the testimony of the confidential witnesses was false.

The plaintiff also alleges that, on January 8, 2013, he filed a grievance through the prison grievance system alleging that the prison was failing to protect him from the

5

Gangster Disciples' plot to eradicate him.  Compl. ¶ 40.  He further alleges that Radtke's issuing the conduct report charging him with being a leader of the Gangster Disciples on January 14, 2013, was motivated by a desire to retaliate against him for filing this grievance.  Compl. ¶¶ 43, 47.

After Wheeler was convicted of being a leader of the Gangster Disciples, he attempted to identify the confidential informants who had testified against him.  Compl. ¶¶ 53–54.  Wheeler alleges that his plan was to "identify and discredit" these witnesses and then use the information he obtained to petition the warden for relief from his disciplinary sanction.  *Id.* ¶ 54.  In fact, however, Wheeler sent letters to friends, family, and other inmates in which he encouraged them to locate certain individuals who Wheeler suspected of being the confidential informants and coerce them into recanting their testimony.[4]  In the letters, Wheeler refers to the suspected informants as "snitches," "cowards," fag ass niggas," "rats," "fuck niggas," and "bitch niggas."  *See* Ex. 5.  The letters reveal that Wheeler thought that one of the informants had been released on probation or parole, and he encouraged the letter recipients to report that this person had committed a robbery.  *Id.*  He also encouraged the letter recipients to report parole violations to the perceived informant's parole officer.  *Id.*  Wheeler also encouraged the letter recipients to find out if the informant had a job, and, if he did, to make repeated phone calls to his place of employment in an effort to get him fired.  *Id.*  The letters also

---

[4] The letters that Wheeler wrote are not attached to the third amended complaint. However, the defendants have filed copies of the letters, *see* ECF No. 39-2, and the pertinent contents of the letters are summarized in an exhibit that the plaintiff attached to his original complaint, *see* Ex. 5, ECF No. 10 at pp. 6–9. The plaintiff admits that he wrote the letters, s*ee* ECF No. 27 at p. 14, and he does not dispute their contents. Because the letters are central to the plaintiff's claims and are concededly authentic, I may consider them when screening the complaint.  *See Tierney*, 304 F.3d at 738.

6

make clear that Wheeler's goal was to have the confidential witnesses recant their testimony. In one letter, Wheeler writes that "[t]he only way to beat a CI statement is recantation," and that "[w]ithout that recantation then we stuck here." ECF No. 39-2 at p. 16.

Because prison administrators were monitoring Wheeler's mail, they learned about his attempts to identify the confidential witnesses and coerce them into recanting. On July 22, 2014, Radtke confronted Wheeler about the letters and warned him that if he did not stop trying to identify the confidential witnesses, she would "write [him up] for everything under the sun." Compl. ¶ 62. Wheeler alleges that the interview ended with Radtke threatening to "pursue prison discipline against Wheeler" were he to prosecute any grievance arising out of the interview or any grievance alleging "erroneous discipline." *Id.* ¶ 63. Wheeler alleges that, on the same day of the interview, he filed two grievances against Radtke. *Id.* ¶ 64.

On August 8, 2014, Radtke issued Wheeler the second conduct report at issue in this suit, which is #2481117. Compl. ¶ 65; *see also* Ex. 5. This conduct report charged Wheeler with "threats" and other disciplinary violations in connection with the letters he wrote to his friends, family, and other inmates. *See* Ex. 5. On August 28, 2014, Wheeler was found guilty of violating a disciplinary rule proscribing "threats" and sentenced to 180 days of disciplinary segregation. *Id.*

In March 2015, the plaintiff was transferred from Waupun to the Wisconsin Secure Program Facility, which plaintiff describes as the "Supermax" prison. Compl. ¶ 81. The plaintiff alleges that the decision to transfer him to this prison was motivated

7

by a desire to retaliate against him for alleging that his disciplinary sanction for being a leader of the Gangster Disciples was based on false evidence. *Id.*

Based on the above facts, Wheeler alleges several claims. He alleges that Radtke's issuing him the conduct report alleging that he was a leader of the Gangster Disciples violated his civil rights in two ways. First, he alleges that the conduct report was issued as retaliation for his filing the January 8, 2013 grievance alleging that prison administrators had failed to protect him from the Gangster Disciples' plot to "eradicate" him. Compl. ¶ 47. Second, he alleges that Radtke issued the conduct report even though she knew that the evidence supporting it was false, and that she therefore violated his right to substantive due process. *Id.* ¶ 48–49. However, neither of these claims may proceed. The allegation that Radtke issued the conduct report because Wheeler had earlier filed a grievance is entirely conclusory and unsupported by any concrete factual allegations. *See Iqbal*, 556 U.S. at 678 (stating that court may disregard legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements"). Perhaps Wheeler believes that the conduct report was retaliatory because it was issued only a few days after Wheeler filed the grievance. However, "[the timing of the action, without more, is insufficient to establish the protected activity as a motivating factor." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 630 (7th Cir. 2001). Moreover, the timing of the conduct report is not suspicious. The conduct report, which was issued in January 2013, was based on facts uncovered in an investigation that took place in December 2012. The fact that Wheeler filed a grievance on another matter between the time of the investigation and the time

8

the conduct report was issued is merely coincidental. Accordingly, this retaliation claim will be dismissed.

Similarly, Wheeler's allegation that Radtke knew that the allegations of the conduct report were false is conclusory and not supported by concrete factual allegations. Although Wheeler adequately alleges that the information supplied by the confidential informants was false, he does not allege any facts that suggest Radtke *knew* that the information was false. To be sure, Wheeler alleges that other inmates either informed or attempted to inform members of the Gang Intelligence Unit of the plot to "eradicate" him. *See* Compl. ¶¶ 28. But even assuming that Radtke had heard rumors about this alleged plot, she was not required to believe that it existed. Rather, she was entitled to believe the confidential informants and file a conduct report based on their allegations. Wheeler was afforded a disciplinary hearing at which he could have attempted to prove that the allegations against him were false and that he was being targeted by the Gangster Disciples for eradication.[5] Accordingly, Radtke's filing the conduct report was not, as Wheeler alleges, an "arbitrary and purposeless use of authority" and did not deprive him of substantive due process. *Id.* ¶ 48 (citing *Leslie v. Doyle*, 125 F.3d 1132, 1136 (7th Cir. 1997). This claim will be dismissed.

Next, Wheeler alleges a claim under the First Amendment based on the prison's monitoring his mail to family, friends, and other inmates. Compl. ¶¶ 57, 77. However, it is well-established that prison administrators may monitor an inmate's outgoing, non-

---

[5] In prior versions of his complaint, Wheeler alleged that the defendants deprived him of procedural due process by failing to provide him with exculpatory evidence to use at the disciplinary hearing. However, Wheeler has not alleged such a claim in the third amended complaint, and he has not identified any specific evidence that the defendants possessed but failed to disclose to him.

9

legal mail. *United States v. Williams*, 951 F.2d 853, 856 (7th Cir. 1992) ("In an institutional setting letters may pose threats to security; thus the incoming and outgoing mail of prisoners may be subjected to surveillance to minimize their opportunity for developing escape plans."); *Gaines v. Lane*, 790 F.2d 1299, 1304 (7th Cir. 1986) (recognizing that prison officials may read non-privileged mail in order to detect possible escape plans or other threats to jail security, and to inspect for contraband); *Smith v. Shimp*, 562 F.2d 423, 425–26 (7th Cir. 1977) (same); s*ee also Altizer v. Deeds*, 191 F.3d 540, 547–48 (4th Cir. 1999) ("Without question, the opening and inspecting of an inmate's outgoing mail is reasonably related to legitimate penological interests, and, therefore, constitutional . . . ."). Thus, the defendants did not violate Wheeler's rights by reading his outgoing mail and learning of his attempts to intimidate witnesses into recanting their testimony.

Next, Wheeler alleges that Radtke issued him the August conduct report for writing the letters as retaliation for his having filed two grievances on July 22, 2014. Compl. ¶ 73–74. Unlike plaintiff's other retaliation claim against Radtke, this one is supported by enough concrete factual allegations to render it plausible. Specifically, Wheeler alleges that during the July 22 interview, Radtke told him that she would file disciplinary charges against him if he filed a grievance relating to the interview or relating to his earlier disciplinary charge. Compl. ¶¶ 63, 73. Wheeler filed two grievances later that day, and Radtke issued him a conduct report a few weeks later.

10

Thus, Wheeler's allegation that the conduct report was retaliation for filing the grievances is plausible. He may proceed on this claim against Radtke.[6]

Wheeler also purports to bring a "class of one" equal protection claim under *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000). Compl. ¶¶ 68–70. The basis for this claim is that Wheeler was treated differently from another inmate, Frederick Jones, who was also issued a conduct report for being a leader of the Gangster Disciples. *Id.* ¶ 70. However, this allegation is conclusory, and Wheeler does not identify any facts that explain how Jones was treated more favorably than he was. Accordingly, this claim will be dismissed.

Wheeler also alleges that the defendants violated his rights by "punish[ing]" him for trying to expose the confidential informants as liars, which Wheeler contends is "conduct that is not proscribed by prison rules or policies." Compl. ¶ 76. However, the disciplinary sanction was issued not because the plaintiff attempted to expose the confidential informants as liars, but because he tried to do so through threats and intimidation. Wheeler does not dispute that attempting to coerce witnesses into

---

[6] In their motion to dismiss the second amended complaint, the defendants point out that Wheeler does not dispute that he wrote the letters that formed the basis for the conduct report, and that therefore Radtke had adequate reason to write the conduct report. *See* Br. at 17, ECF No. 51. However, if Radtke would not have written the report but for Wheeler's having filed the grievances, then she will be liable for retaliation even if the conduct report was otherwise justified. *See Greene v. Doruff*, 660 F.3d 975, 976–80 (7th Cir. 2011). At the summary judgment stage, Radtke may be able to show that, given the seriousness of Wheeler's alleged conduct, she or another prison administrator would have issued the conduct report even if Wheeler had not filed the grievances. However, because it is the defendant's burden to show that the adverse action would have been taken regardless of the plaintiff's exercise of his rights, *see id.* at 979, this is not an issue that I may resolve at the pleading stage.

11

recanting their testimony resulted in a violation of the prison disciplinary rule proscribing "threats." *See* Wis. Admin. Code § DOC 303.18.

Next, Wheeler alleges that certain defendants were deliberately indifferent to his safety. Compl. ¶¶ 78–79. However, this claim is conclusory and hard to understand. The allegation seems to be that the defendants failed to protect Wheeler from the Gangster Disciples' plot to "eradicate" him. However, the plaintiff does not allege that he suffered any serious injury as a result of this supposed failure to protect. Therefore, the claim will be dismissed. *See Borello v.* Allison, 446 F.3d 742, 747 (7th Cir. 2006) (stating that, to establish an Eighth Amendment failure-to-protect claim, a plaintiff must show that he suffered an objectively "sufficiently serious" injury as a result of the alleged failure to protect).

Finally, Wheeler alleges that he was transferred to the Wisconsin Secure Program facility in retaliation for "challenging" the defendants' use of false evidence in the disciplinary proceeding concerning Wheeler's involvement in the Gangster Disciples. Compl. ¶¶ 80–83. Again, however, this claim is conclusory and unsupported by any concrete factual allegations. No allegation of the complaint suggests that there was any connection between the plaintiff's protected conduct and his transfer to a different prison. Accordingly, this claim will be dismissed.

In sum, all claims in the third amended complaint are dismissed for failure to state a claim upon which relief can be granted except for plaintiff's retaliation claim against Radtke involving the August conduct report. All defendants other than Radtke are dismissed from the case.

12

## II. OTHER MOTIONS

### A. Motion for Sanctions

On January 15, 2016, the defendants filed a motion to sanction the plaintiff by dismissing this case with prejudice because he submitted to the court a declaration signed by Willie G. Steward. Steward is one of the inmates who Wheeler believed was one of Radtke's confidential informants. *See* ECF No. 39-2 at 16. Steward's declaration states that, in December 2012, he was interrogated by Radtke and told that if he did not sign a statement, he would be taken to the "hole." Steward Decl. ¶ 5, ECF No. 75-2. Steward's declaration does not identify the contents of the statement he supposedly signed, but the declaration states that "if any information was used in the investigation of Mr. Wheeler, and that statement that Capt. Radtke had me sign, I'm informing you that I was threatened with being thrown in the 'Hole' by Capt. Radtke if I didn't comply. I cooperated out of fear of being place in Waupun's segregation unit cause it was known for being a harsh environment." *Id.* ¶ 7.

The defendants contend that Steward's declaration is false and was obtained by Wheeler through witness intimidation and tampering, i.e., by writing the letters to friends, family, and other inmates in which he encourages them to find Steward and coerce him into recanting his testimony. (The defendants have disclosed the identities of the three confidential informants to the court, and Steward is not one of them.[7]) The defendants argue that Wheeler's submitting this declaration constitutes bad faith and an

---

[7] The defendants have filed a motion to seal the document containing the identities of the confidential informants. Because revealing the identities of the informants could lead to physical injury or other harm, I will grant that motion. *See Whitford v. Boglino*, 63 F.3d 527, 535 (7th Cir. 1995) (recognizing that disclosing identities of inmate informants could lead to death or serious injury).

13

abuse of the judicial system, and that this case should be dismissed as a sanction for engaging in such conduct. *See Salmeron v. Enterprise Recovery Sys., Inc.*, 579 F.3d 787, 793 (7th Cir. 2009) (recognizing that court has inherent power to sanction a litigant when the litigant has willfully abused the judicial process or otherwise conducted litigation in bad faith).

Based on the letters in which Wheeler encourages his acquaintances to find Steward and coerce him into recanting his testimony against Wheeler, it seems probable that Wheeler obtained Steward's declaration through coercion. However, at this point, I will not dismiss this case as a sanction for filing the declaration. The declaration is not relevant to the only claim remaining in this suit, which is Wheeler's retaliation claim against Radtke based on the August conduct report. The only contested issue relating to that claim is whether Radtke would have issued the conduct report but for Wheeler's having filed two grievances against her. The matters stated in Steward's declaration are not relevant to that issue. Because the declaration pertains to matters that are no longer relevant to this suit, I do not believe that the sanction of dismissal is appropriate at this point. However, should Wheeler in the future attempt to rely on this declaration or any other evidence that appears to have been obtained through coercion, I will reconsider this decision.[8]

**B. Plaintiff's Motion for a Temporary Restraining Order/Preliminary Injunction**

On January 19, 2016, Wheeler filed a motion for a temporary restraining order and preliminary injunction. ECF No. 88. Wheeler requests that I enter an injunction

---

[8] The plaintiff has filed a motion for countersanctions against defendants' counsel. *See* ECF No. 97. However, the motion is baseless and will be denied.

14

forbidding the defendants from using three conduct reports—including the conduct report that is the subject of Wheeler's surviving retaliation claim against Radtke—as a basis for keeping him in segregation. To the extent Wheeler's motion is based on conduct reports other than the August conduct report that is at issue in his surviving claim, the motion is denied on the ground that it seeks relief in connection with claims that are no longer part of this suit. To the extent the motion is based on the August conduct report, it is denied on the ground that Wheeler would not be entitled to injunctive relief even if he prevailed on his retaliation claim against Radtke. As discussed above, the surviving claim alleges that Radtke would not have written the conduct report had Wheeler not engaged in protected conduct, i.e., filed two grievances against her. However, Wheeler does not dispute that he engaged in the conduct alleged in the report, i.e., that he wrote letters to acquaintances in which he encouraged them to coerce perceived informants into recanting. Thus, Wheeler was properly found guilty of the conduct alleged. For this reason, even if Wheeler is able to prove that Radtke wrote the conduct report as retaliation for Wheeler's engaging in protected conduct, I would not grant him an injunction that essentially barred prison administrators (who are no longer parties to this suit) from using the fact that he had been found guilty of the conduct alleged in the report as a basis for housing him in segregation. Accordingly, the motion for a temporary restraining order/preliminary injunction will be denied.

### C. Plaintiff's Motion for Reconsideration

Wheeler has filed a motion for reconsideration of my decision to grant the defendants a protective order, under which they are permitted to withhold the letters that

15

formed the basis for the August conduct report and the identities of the recipients of those letters. *See* Jan. 13, 2016 Decision and Order at 2–3, ECF No. 81. In granting the defendants a protective order, I reasoned that allowing the plaintiff to see the letters and identify their recipients could place the recipients of the letters in danger. I also reasoned that because the relevant contents of the letters are reproduced in the conduct report itself, which the plaintiff already possesses, he had no need for copies of the actual letters. In his motion for reconsideration, the plaintiff does not explain why he would need copies of the actual letters and to know who received them in order to prosecute this suit. In any event, the letters themselves and the identities of the recipients are clearly not relevant to the plaintiff's remaining retaliation claim against Radtke. Although the letters formed the basis for the allegedly retaliatory conduct report, the letters and the identities of the recipients shed no light on whether Radtke issued the conduct report as retaliation for Wheeler's having filed grievances against her, or on whether she would have issued the conduct report even if Wheeler had not engaged in protected activity. To be sure, the contents of the letters are relevant to the question of whether Wheeler was guilty of the conduct alleged in the report, but again, the relevant contents are described in the conduct report and Wheeler has never denied writing the letters. Therefore, Wheeler has no legitimate need for copies of the letters themselves.

In his motion for reconsideration, Wheeler also challenges my decision to deny his motion to require the defendants to identify the confidential informant known as "Will." *See* ECF Nos. 45 (motion) & 81 at 3–4 (decision on motion). I denied the motion because disclosing the name of the confidential informant could result in harm to the

16

informant and could compromise prison security. Nothing in Wheeler's motion for reconsideration suggests that my decision was erroneous. In any event, the identity of the confidential informant has no relevance to Wheeler's remaining retaliation claim against Radtke. Thus, Wheeler's motion for reconsideration will be denied.

### D. Plaintiff's Motion to Supplement the Third Amended Complaint

On March 17, 2016, Wheeler filed a motion to supplement his third amended complaint. *See* ECF No. 106. The motion seeks to attach as an exhibit to the complaint a copy of proposed findings of fact that were filed in a case in the Western District of Wisconsin, *Joeval Jones v. Todd Russell, et. al.*, W.D. Wis. Case No. 15-cv-56-bbc. In that case, the court granted summary judgment for the plaintiff, Joeval Jones, on claims that prison administrators violated Jones's rights by punishing him for attempting to send Wheeler a declaration to use in defending himself against the charge that he was a leader of the Gangster Disciples. *See Jones v.* Russell, __ F. Supp. 3d __, 2015 WL 8485274, at *2–7 (W.D. Wis. Dec. 9, 2015). Wheeler references this case repeatedly in his third amended complaint and in other motions that he has filed recently. Wheeler seems to think that the case establishes certain facts that are binding on the defendants in this case under the doctrine of issue preclusion. However, even assuming that any facts established in *Jones* could have issue-preclusive effect against the parties to the present case, who were not defendants in *Jones*, those facts are not relevant to any of the claims alleged in the third amended complaint. All that was established in *Jones* is that the defendants should not have confiscated the affidavit that Joeval Jones sent to Wheeler and that they should not have punished Jones for sending the affidavit. Wheeler seems to think that the case establishes that everything

17

that Jones said in his affidavit is true, including that gang members had orchestrated a misinformation campaign intended to give prison officials the false impression that Wheeler was significantly involved in the Gangster Disciples. *See* Compl. ¶ 31 (alleging that "Defendants in this case cannot, now, contest the affidavit of Joeval Jones"); *Jones*, 2015 WL 8285474, at *2 (summarizing Jones's affidavit). However, the truth of the matters stated in the affidavit was not at issue in *Jones*, and the court in that case never expressed any view on the veracity of the affidavit's contents. Thus, Wheeler's reliance on the *Jones* case is misplaced, and his motion to supplement the complaint to add an exhibit that was filed in *Jones* will be denied.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that the plaintiff's motion to withdraw his opposition to the defendants' motion to dismiss, to withdraw his motion for summary judgment, and for leave to file a third amended complaint (ECF No. 93) is **GRANTED**. The plaintiff's second amended complaint is **DISMISSED**, and his motion for summary judgment (ECF No. 76) will be considered withdrawn.

**IT IS FURTHER ORDERED** that the plaintiff's motion for screening of the third amended complaint (ECF No. 104) is **GRANTED**.

**IT IS FURTHER ORDERED** that all claims in the third amended complaint other than the plaintiff's retaliation claim against Cynthia Radtke relating to the August conduct report are **DISMISSED** for failure to state a claim upon which relief can be granted. All defendants other than Radtke are dismissed from this case.

**IT IS FURTHER ORDERED** that the defendants' motion to dismiss parts of the second amended complaint (ECF No. 50) is **DENIED** as **MOOT**.

18

**IT IS FURTHER ORDERED** that the defendants' motion for sanctions (ECF No. 82) is **DENIED**.

**IT IS FURTHER ORDERED** that the defendants' motions to stay (ECF Nos. 86 & 103) are **DENIED** as **MOOT**.

**IT IS FURTHER ORDERED** that the defendants' motion to seal (ECF No. 87) is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for temporary restraining order and preliminary injunction (ECF No. 88) is **DENIED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for reconsideration (ECF No. 90) is **DENIED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for countersanctions (ECF No. 97) is **DENIED**.

**IT IS FURTHER ORDERED** that plaintiff's motion to supplement the third amended complaint (ECF No. 106) is **DENIED**.

**IT IS FURTHER ORDERED** that plaintiff's motion to supplement his motion to withdraw (ECF No. 107) is **DENIED** as **MOOT**.

Dated at Milwaukee, Wisconsin, this 13th day of April, 2016.

s/ Lynn Adelman
_____
Lynn Adelman
United States District Judge