# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

TINGIA D. WHEELER,
      Plaintiff,

v.                                          Case No. 15-C-95

CAPTAIN CYNTHIA RADTKE,
      Defendant.

---

## DECISION AND ORDER

The *pro se* plaintiff, Tingia Wheeler, a Wisconsin state prisoner, filed this civil rights action under 42 U.S.C. § 1983. Wheeler filed a third amended complaint alleging that the defendant, Captain Cynthia Radtke, issued him a retaliatory conduct report.[1] The parties have filed cross-motions for summary judgment. For the reasons explained in this order, I will deny plaintiff's motion, grant defendant's motion, and dismiss this case.

## I. FACTS

### A. Parties

Wheeler is confined at the Waupun Correctional Institution (Waupun). Defendant Radtke is a supervising officer 2 (captain) at Waupun and has been employed in this position since February 2012. In addition to her position as captain, between November 2012 and April 2016, Radtke was also the security threat groups/gang coordinator at

---

[1] Wheeler's third amended complaint raised several other claims. Upon screening the pleading, I dismissed all claims other than Wheeler's retaliation claim against Radtke. (ECF No. 108 at 2-12, 18.)

Waupun. She left that position to assume the position of administrative captain at Waupun.

## B. Conduct Report 2303800

On January 14, 2013, Captain Radtke issued Wheeler Conduct Report 2303800 for violating Wis. Admin. Code § DOC 303.20,[2] Group Resistance and Petitions, among other charges. The conduct report was based on an investigation Radtke oversaw regarding the Gangster Disciples actively recruiting at Waupun. During the investigation, Radtke obtained sworn statements from three confidential informants who testified that Wheeler held a leadership position in the Gangster Disciples at the institution and was engaging in gang activity.[3] Wheeler was found guilty of the charges and he was disciplined by being removed from general population. Once his disciplinary separation ended, Wheeler was put in an administrative confinement status that kept him out of general population and prevented him from continuing gang activity.

Wheeler challenged Conduct Report 2303800 in Dane County Case Number 13-CV-2390, *State ex. rel. Fredrick Jones and Tingia Wheeler v. William Pollard*. On April 16, 2014, Dane County Circuit Court Judge Frank Remington affirmed the finding of guilt. Judge Remington found that the three confidential informant statements corroborated one another, and provided sufficient evidence to support Wheeler's guilt.

---

[2] In December 2014, Wis. Admin. Code ch. DOC 303 was revised. Though most provisions remain substantively the same, many have been renumbered. All subsequent references to Wis. Admin. Code ch. DOC 303 are to the December 2006 version, unless otherwise noted.

[3] According to Wheeler, the confidential informants were not genuine informers, but gang members acting out an "Eradication" plot against Wheeler because he wanted to cut ties with the gang.

### C. Mail Monitoring Investigation

Around April 2014, Waupun staff learned through monitoring Wheeler's mail that he was engaging in efforts to identify the confidential informants who gave statements against him for Conduct Report 2303800. At the time this issue arose, Captain Radtke decided that the best course of action was to investigate Wheeler's actions by monitoring his mail, and by monitoring the mail of inmates he contacted to assist him in outing informants. Radtke decided to monitor Wheeler's mail in lieu of immediate action because she believed the benefit of doing so outweighed any potential risks. By monitoring Wheeler's mail prison staff could gain valuable information about his intentions, plans, potential gang activity, and inmates who were helping him. Waupun staff could also learn which inmates were aligned with Wheeler or on good terms with him by evaluating the responses received.

Radtke decided against putting Wheeler on notice that Waupun staff were aware of his actions because that would likely cause him to use a method they could not monitor as effectively, such as in-person communications with other inmates, to out perceived informants. At the time, Radtke believed the risk of potential harm from letting Wheeler continue his letter writing campaign was somewhat remote. The information Wheeler had about who informed on him was inaccurate. Additionally, his information about the inmates he identified as informants was also largely inaccurate. The inaccuracies ranged from identifying inmates who did not exist, to having the wrong location. When Wheeler inaccurately named an actual inmate as one of the informants in his letters, Radtke took steps to make sure that harm was unlikely. Radtke made sure that the inmates he named were a safe distance from Wheeler. She also had them

interviewed by officials at their institution to inform them of Wheeler's actions, and to make sure they did not have any concerns about their safety.

Between April and July 2014, Wheeler made intensive efforts through his letters to determine the identities of inmates he believed were his confidential informants. He wrote letters to other inmates throughout the Wisconsin Prison System, and in the community. In his letters, Wheeler labeled the perceived informants as "snitches," "coward," "fag ass niggas," "rats," and "fuck niggas."

In one letter, he states "I can never be paroled with the allegations that I'm some kind of gang leader. I can't win in court even with my intelligence. The only way to win is by hook or crook just like these white folks are playing it." (8/31/16 Radtke Decl., ¶ 13; Dkt. 39-2, Ex. B, p. 5.) Wheeler's letters showed that he was engaging in efforts to strong arm perceived informants into recanting any prior statements. At the same time, he was also seeking retribution against the informants, especially if they would not give him what he wanted. For example, in one letter he wrote the following about Steward Williams, a perceived informant:

> I've written this nigga twice to no avail & it's time to play the game. Bruh if I can't never be free then let this bitch ass nigga sleep in the bed with the same motherfuckas that he got in bed with. He must be on parole because you don't go from Waupun to the streets and don't have no papers. The white girl said get on Zaba.com & put his name Steward Earl Williams [address listed] & his landline and next of kin will pop up. If he has a job, he should lose it if people are continuously calling him. If he's got a bitch, she should know he's a weak ass bitch ass nigga. To be publically ridiculed & shamed could convince him to do right. If worse comes, check to see if he's on the bracelet. If not, could you or someone ride up to Madison & then report a two eleven? That would be sweet music to my ears.
>
> …

> In this instance – social media (Facebook, Instagram, Twitter) is our friend. The police are our friends this time – it's only fitting if we can't get what we need – then we flip the script on his bitch ass. …

(8/31/16 Radtke Decl., ¶ 14; Dkt. 39-2, Ex. B pp. 5-6.) "Two eleven" is a common code word for robbery.

In another letter Wheeler stated:

> The only way to beat a CI statement is recantation. This fuck nigga "Will" just got out on Parole. Jamil wrote me & told me that he got down on John Brown at Stanley & that's why he was here so he's positively one of my three. I'm gonna drive on juice next week, also I wrote him & that wasn't persuasive so since he's on parole he gotta have a P.O. so we're going that route. Little Bruh said if you are in the club then you're facing revocation. We need every asset that we got in Madison bruh. See what your connects can do. Without that recantation then we stuck here.
>
> …

(8/31/16 Radtke Decl., ¶ 15; Dkt. 39-2, Ex. B, p. 16.)

At one point, Wheeler sent an affidavit he wrote for "Steward Williams" to a third inmate to be passed to his sister. In the letter included with that affidavit he wrote:

> Tell her this is ole boy who pulled that dirty mack move on me. He's out on papers and I need that affidavit in the next 14 days. If I can't be free then why should he be? She should contact community corrections (Parole Officer) or better yet maybe he is found guilty of a 211 to her. You feel me?
>
> . . . .
>
> Social media is our friend & the best tool we got right now. My nigga a recantation will change how the game is played with these statements. This will set a precedent for us & give all real niggas a chance. …

(8/31/16 Radtke Decl., ¶ 16; Dkt. 39-2, Ex. B, p. 12.)

Most of the inmates that Wheeler solicited in his letters to assist him in the coercion of perceived informants are known members or associates of security threat

5

groups, most of them being Gangster Disciples like Wheeler. In one letter, Wheeler states "I talked to both Mr. Prude & Mr. Jones & we all agree that if possible that everything must be done for me to be saved." (8/31/16 Radtke Decl., ¶ 17; Dkt. 39-2, Ex. B. p. 8.) This refers to Terence Prude and Joeval Jones, members of the Gangster Disciples in the Wisconsin prison system.

Wheeler had obtained an address in Madison for someone he believed was "Will." Subsequently, he wrote to a Madison radio station requesting a "shout out," or a song request, to "Will" and gave the address. The song Wheeler selected, "First 48" by "Plies," was an attempt to announce "Will" as an informant. The song lyrics included "the crackas applying a little pressure to your pussy nigga break … what happened to the G (gang) code cause back in the day only pussy ass nigga were the ones that told." (8/31/16 Radtke Decl., ¶ 19.) The inmate Wheeler named in the song request was not paroled to Madison, had never lived at the address provided, and had no family that lived at that address.

Based on Wheeler's actions, Department of Corrections Central Administration staff telephoned the Madison Police Department to notify them of the potential danger to the residents at the address given by Wheeler. Radtke believes she spoke with Sergeant Tim Radtke from the Madison Police Department at some point after they were notified. (While Sgt. Radtke and Captain Radtke share the same last name, they are not related.)

After Wheeler attempted to out an informant on the radio with an address, Captain Radtke decided it was time to let him know they were aware of what he was doing, and give him a conduct report. Wheeler's use of a home address, and attempt to

6

announce that address to others as the location of an informant, was an escalation in his behavior that created an unacceptable risk of harm to the community.

### D. July 22, 2014 Interview

On July 22, 2014, Wheeler was escorted from his cell to a separate room to meet with Captain Radtke and Officer Mierzejewski. Once he arrived in the room, Wheeler was shown letters that he had written to his family. Captain Radtke told Wheeler that staff had been reading his mail for the past few months and had photocopied it. Radtke also told Wheeler that his effort to identify informants put people in danger. The parties dispute most of the rest of what Radtke said to plaintiff at this meeting.

According to Wheeler, when he first sat down in the room, Captain Radtke told him that she was aware he was searching for a "miracle affidavit." Radtke said she knew that Wheeler was looking for "Headbussers" or informants who weren't genuine. She allegedly said that she knew that Conduct Report 2303800 was false because Wheeler had been the subject of an eradication plot by the Gangster Disciples, but it did not give him the right to attempt to out those inmates who had worked with her. Radtke asked Wheeler what it would take to stop his inquiries. When Wheeler allegedly refused to stop his inquiries, Captain Radtke called him a "nigger" and equated his Islam religion to Al-Qaeda. Radtke allegedly offered Wheeler "immunity" if he would stop doing what he was doing and just finish his time in the "hole." She also allegedly said that Wheeler could take the deal, or otherwise file an "ICI" (inmate complaint). Radtke also allegedly told Wheeler that the "ICI" works for "them" and that as soon as she was contacted she would write him up for "everything under the sun."

7

According to Captain Radtke, Officer Mierzejewski and Radtke met with Wheeler on July 22, 2014, to discuss his efforts to identify and threaten perceived informants. During the meeting, they showed him letters they had photocopied, and Radtke told him he would be receiving a conduct report for his actions. Mierzejewski and Radtke also told him that he was wrong about the individuals he had identified as informants and that his attempts to identify informants put people in danger. Wheeler remained largely silent during the interview. At no time during the meeting did Officer Mierzejewski or Radtke refer to Wheeler as "you black Muslims," the n-word, Al-Qaeda, cancer, or any derogatory term. At no time during the meeting did Officer Mierzejewski or Radtke communicate to Wheeler that they: believed or knew he was innocent of the allegations in Conduct Report 2303800; knew he turned down a position with the Gangster Disciples and that is why he had a fight with "Killa [Alvin Tubbs];" or knew he was the subject of an eradication plot by the Gangster Disciples. Radtke believes, based on all the evidence, that Wheeler was properly found guilty of Conduct Report 2303800. At no time during or after the July 22, 2014, meeting with Wheeler did Radtke offer him "immunity" if he stopped doing what he was doing and "just finish" his "hole time." Radtke's intention all along was to issue Wheeler a conduct report, which is why she told him at that time he would be receiving one. Radtke told Wheeler that he would be receiving a conduct report because his efforts to identify, threaten, and coerce perceived informants jeopardized the safety of individuals within the prison system and the community. His attempts to identify, locate, and threaten perceived informants created the possibility of physical and violent retaliation against individuals he identified or who resided at locations he identified. At no time during the interview did they

discuss what would happen if Wheeler filed an inmate complaint about Radtke. Radtke never told Wheeler that "ICI," or the inmate complaint examiner, works for "us" and that as soon as Radtke was contacted she would write him up for "everything under the sun."

E. **Wheeler's Inmate Complaints**

On July 24, 2014, Wheeler submitted two offender complaints to the inmate complaint examiner's office at Waupun. Both of these complaints were returned to Wheeler with directions to attempt informally resolve them with Waupun Security Director Tony Meli.

In one of the offender complaints Wheeler submitted, he described the July 22, 2014, meeting with Radtke and Mierzejewski:

> At 10:17 AM COII Passig came to my door, put a tether on it, and opened my trap door, and said "Let's go." I repeated twice "Where?" He said "You have an HSU" I stated "naw'll." His demeanor changed, and he became belligerent. He said "you're not going." I again said "naw'll" meaning "No!" The trap continued to be open and he stood there looking at me in an aggressive stance. He then said "Radtke" and I again said "naw'll." At 10:27 AM Passig again came to my cell door and whispered through the hole. He said "Radtke said if you don't come out, you'll be receiving multiple conduct reports." With that threat, I got up and got dressed, and I beat on the wall to my next door neighbor (118) so that he can witness what was going on. I put my hands out of the trap and proceeded to get handcuffed. I was escorted to the property room where staff conducts its private interviews. When Capt. Radtke saw me she and "Gunrack" alias (real name unknown) got up and opened the door. She stated "what made you come out?" I stated that "Passig said if I didn't come out I'd receive multiple conduct reports." She said "you're getting them anyway." When I sat down I noticed she had a manila folder with photo-copies of all my correspondences. She started off her colloquy by stating "you've been wrong," "you've been wrong about everyone you fingered as a confidential informant in your case." "P-Dubb is not in KM, that's a fact – so your girl was wrong and Willie Steward is in Racine." She then stated: "You'll be receiving a notice of non-delivery for this letter to your brother, and I'm gonna write you up for everything under the sun.

9

> Group resistance, threats, (inaudible)." That's when COII Gunrack (real name unknown) took over. "I don't think you know how serious this is. You're putting people's lives in danger. I mean all you had to do was sit back and do your time but this has really sunk your ship. The people at that address, they've never been to prison and they're worried your letters will put them in danger." I stated "I believe Steward Earl Williams testifying falsely against other inmates and being a headbusser is a matter of public concern." That was the end of the interview which I believe was meant to intimidate and threaten me to stop my pursuit of the evidence I need to prevail on my cases.

(Muenchow Decl., ¶ 10; Ex. 1003.) In the other inmate complaint Wheeler submitted on July 24, 2014, he complained about Captain Radtke having photocopies of his outgoing mail.

Prior to this lawsuit, Radtke had no knowledge of any offender complaints filed by Wheeler through the Inmate Complaint Review System. Pursuant to Administrative Code 310, offender complaints filed by inmates are considered confidential. At times, the inmate complaint examiner may contact institution staff for information regarding the inmate's complaints, such as the Housing Unit Supervisor for information if the complaint is about security staff on his unit. At no time was Radtke contacted by the inmate complaint examiner regarding any complaints filed by Wheeler about the July 22, 2014, interview or actions taken by Radtke in the course of her investigation.

Prior to this lawsuit, Radtke had no knowledge of any complaints filed by Wheeler arising out of the July 22, 2014 interview or actions taken by her in the course of her investigation prior to issuing him Conduct Report 2481117.

### F. Conduct Report 2481117

On August 8, 2014, Radtke wrote Wheeler Conduct Report 2481117 based on his efforts to threaten confidential informants. Radtke charged him with violating Wis.

10

Admin. Code §§ DOC 303.20, Group Resistance and Petitions, 303.16, Threats, and 303.41, Counterfeiting and Forgery.

After the July 22, 2014, meeting with Wheeler, it took Radtke until August 8, 2014, to write Conduct Report 2481117 because she needed time to draft and compile the conduct report, based on the extent of Wheeler's actions. Radtke was motivated in writing the conduct report by her duty to write such reports under Wis. Admin. Code DOC 303.64 - DOC 303.66. Pursuant to these administrative rules, Captain Radtke must write a conduct report when, on the basis of her observation and other information she obtains, Radtke concludes that an inmate has violated one or more of the prison disciplinary rules. Radtke alleges that she was not motivated in writing this conduct report, in whole or in part, by an intention of retaliating against Wheeler for reporting misconduct or in retaliation for any other action.

A disciplinary hearing was held on Conduct Report 2481117, pursuant to policy and Wis. Admin. Code §§ DOC 303.65 and 303.78. Wheeler was found guilty of violations Wis. Admin. Code § DOC 303.16, Threats at the disciplinary hearing held on August 28, 2014. Wheeler received a disposition of 180 days disciplinary separation. Radtke did not personally participate in any decision concerning the disposition of Conduct Report 2481117. Radtke had no authority over the hearing officers and/or adjustment committees regarding the disposition of Conduct Report 2481117.

## II. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

### III. ANALYSIS

Wheeler contends that Radtke retaliated against him by issuing him Conduct Report 2481117 after he filed inmate complaints alleging "staff misconduct" following the July 22, 2014, interview. According to Wheeler, he has submitted evidence that he would not have received a conduct report if he had not filed the inmate complaints, citing to his declaration and to the declaration of fellow inmate Earnest Beamon.[4]

---

[4] Beamon avers that he heard Officer Mounghey "say something about Capt. Radtke and that he (Wheeler) would have never received a conduct report if he (Wheeler)

12

Captain Radtke contends that no reasonable juror could believe Wheeler's testimony that she told him he would receive a conduct report if he filed an inmate complaint. According to Radtke, the admissible evidence shows that she told Wheeler at the July 22, 2014, interview that he would be receiving a conduct report for his threatening letters. Radtke also contends that the admissible evidence shows that she had no knowledge of Wheeler's inmate complaints, so the conduct report could not have been retaliatory. Radtke further contends that summary judgment is appropriate because punishing Wheeler for his threatening letters served a legitimate correctional goal. Lastly, Radtke contends that the court should sanction Wheeler for his misconduct.

At the summary judgment stage, Wheeler has the initial burden to make out a *prima facie* case of retaliation by showing that: "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation likely to deter such activity; and (3) the First Amendment activity was at least a motivating factor in the decision to impose the deprivation." *Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014). If Wheeler makes this *prima facie* showing, Radtke must show that the adverse action would have occurred anyway. *Mays v. Springborn*, 719 F.3d 631, 634 (7th Cir. 2013); *see also Greene v. Doruff*, 660 F.3d 975, 979 (7th Cir. 2011) (if inmate meets all three elements, burden shifts to show that officers would have taken the same actions "even in the

---

hadn't filed a complaint[.]" (Beamon Decl., ECF No. 130-1 at 49, Exh. 31.) However, Beamon's statement about what he heard Officer Mounghey say about Captain Radtke's motivation for issuing Wheeler a conduct report is inadmissible hearsay. *See* Fed. R. Evid. 801, 802.

absence of protected conduct").[5]  If Radtke meets this burden, then Wheeler must show that Radtke's proffered reason was pretextual — in other words, a lie – and that the real reason was retaliatory animus. *Thayer v. Chiczewski*, 705 F.3d 237, 252 (7th Cir. 2012).

The parties focus on Radtke's motivation in issuing the conduct report.  Radtke contends that I should not consider Wheeler's declaration to the extent that he avers that Radtke said she would issue him a conduct report if he filed a grievance related to the July 22, 2014, interview.  According to Radtke, the declaration testimony Wheeler cites in an effort to create a dispute should be disregarded because no reasonable juror could believe it, citing *Seshadri v. Kasraian*, 130 F.3d 798, 801 (7th Cir. 1997).  Radtke explains that Wheeler's declaration must be disregarded because it is contradicted by

---

[5] Radtke contends that the Seventh Circuit recently found that defendants do not have to show that the retaliatory act would have occurred anyway, as long as they can show that it was supported by a legitimate correctional goal, citing *Brown v. Phillips*, 801 F.3d 849, 855 (7th Cir. 2015) (sex offender's claim that detention facility's policy prohibiting game consoles was retaliatory failed because policy was supported by legitimate reasons and therefore it was irrelevant that facility may have had a retaliatory motive for enacting it) (citing *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (prisoner's retaliation claims fails where action taken serves legitimate correctional goal).  On initial review, *Brown* does seem inconsistent with *Mays* and *Greene* as to a defendant's burden in a retaliation claim.  However, I am not convinced that *Brown* meant to change that standard because *Brown's* brief discussion of the retaliation claim – which is limited to the last paragraph of the opinion – focuses on the fact that the court had already determined that the policy served a legitimate correctional goal, under the standard set forth in *Turner v. Safley*, 482 U.S. 78 (1987).  *Brown* is therefore distinguishable from this case because in this case a prison policy that has already been determined to be legitimate under *Turner* is not at issue.  In addition, *Brown* does not mention changing the well-established standard.  *Cf. Mays*, 719 F.3d at 634 (noting that the burden of proof related to causation in First Amendment tort cases remains controlled by *Mt. Healthy Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977), and wondering how the state could have overlooked the *Greene* case where the court stated that the defendant can rebut, but only by showing that his conduct was not a necessary condition of the harm – the harm would have occurred anyway).

his prior statements in his inmate complaint, in which he repeatedly said that Captain Radtke told him on July 22, 2014, that he was receiving a conduct report.

"[T]estimony can and should be rejected without a trial if, in the circumstances, no reasonable person would believe it." *Seshadri*, 130 F.3d at 802 (citations omitted). In *Seshadri*, the court rejected Seshadri's testimony, provided in an affidavit in opposition to a motion for summary judgment, that he was the sole author of an article and that Kasraian was not a joint author, where, prior to litigation, Seshadri had made a number of statements acknowledging that the article was not a joint work. *Id.* at 802-03. While noting that some of the statements in Seshadri's affidavit were farfetched, the court was mostly troubled with the fact that Seshadri had not tried to explain in his affidavit the many prior written statements he had made acknowledging Kasraian as a joint author. *Id.* at 804 ("a party might be able to explain away his prior inconsistent statements[,] [b]ut here we note the corollary: if he makes no attempt at explanation, he is stuck with those statements").

In this case, in the inmate complaint that Wheeler filed on July 24, 2014, he provided a detailed description of the July 22, 2014, interview. Wheeler stated that during the interview Radtke twice told him that he would be receiving conduct reports for his activities of trying to identify the confidential informants. He stated that the conduct report charges would include Group Resistance and Threats. Wheeler also stated that he believed the purpose of the interview was to intimidate and threaten him to stop his pursuit of the evidence he needed to proceed on his cases.

In contrast to Wheeler's inmate complaint, at summary judgment he denies that Radtke told him during the interview that he would be receiving a conduct report for his actions. In his declaration, Wheeler avers that during the interview Radtke offered him immunity for his letter-writing activities if he stopped doing it and instead just finished serving his segregation time. He also avers that Radtke told him he could either take the deal or file an inmate complaint and that if he filed an inmate complaint, she would issue him a conduct report as soon as she was contacted. Wheeler does not explain the inconsistencies between his inmate complaint and his declaration, and Radtke urges me to deem his declaration inadmissible under *Seshadri*.

I cannot think of a reasonable explanation for the inconsistencies, other than the possibility that Wheeler is lying in his declaration about what occurred at the meeting in order to advance his retaliation claim against Radtke. And while *Seshadri* directs a district court to reject testimony without trial if under the circumstances no reasonable person would believe it, I am mindful that "credibility issues are to be left to the trier of fact to resolve on the basis of oral testimony *except* in extreme cases." *In re Chavin*, 150 F.3d 726, 728 (7th Cir. 1998) (emphasis in original).

> The exceptional category is – exceptional. For the case to be classified as extreme, the testimony sought to be withheld from the trier of fact must be not just implausible, but utterly implausible in light of all relevant circumstances.

*Id.*

In this case, I need not determine whether to decide this factual issue myself (due to unreasonableness) or send it to the jury because the case is subject to dismissal on another basis. In short, it is undisputed that Radtke didn't know that

Wheeler filed the inmate complaints on July 24, 2014. Wheeler did not submit admissible evidence to dispute this fact and it is therefore undisputed.

Even if Radtke had known that Wheeler submitted the inmate complaints, Radtke has submitted proof (aside from what she allegedly said during the July 22, 2014, interview) that she would have disciplined him anyway for a legitimate reason. Specifically, when Radtke began investigating Wheeler in April 2014 after learning that he was trying to identify the confidential informants who gave statements against him for Conduct Report 2303800, she decided the best course of action at that time was to monitor his mail to learn more, instead of taking immediate action. Once Wheeler's activities reached the point of trying to out an individual on the radio using a home address, Radtke decided it was time to stop Wheeler and give him a conduct report for his actions. After discussing Wheeler's behavior with him on July 22, 2014, Radtke issued him the conduct report on August 8, 2014. Wisconsin's administrative rules mandated that Radtke issue Wheeler a conduct report for his behavior. The court concludes that on this record, even if Radtke had known that Wheeler submitted two inmate complaints regarding the July 22, 2014, interview, she would have issued him a conduct report based on his repeated rule violations and her mandate to do so. A reasonable factfinder could not conclude that Radtke retaliated against Wheeler. Therefore, I will grant Radtke's motion for summary judgment and deny Wheeler's motion for summary judgment.

Lastly, Radtke requests that the court levy monetary sanctions against Wheeler and issue him a "strike" for willfully abusing the judicial process and conducting this

litigation in bad faith by submitted fabricated testimony.  However, I have not concluded that Wheeler submitted fabricated testimony.  Even if I had, Wheeler is proceeding *in forma pauperis* so a monetary sanction is impractical.  Moreover, the *in forma pauperis* statute does not provide for imposition of a "strike" for the submission of fabricated testimony.  *See* 28 U.S.C. § 1915(g).  Therefore, I will not sanction Wheeler.

## IV. CONCLUSION

For the reasons stated, **IT IS ORDERED** that the plaintiff's motion for summary judgment (ECF No. 128) is **DENIED**.

**IT IS FURTHER ORDERED** that the defendant's motion for summary judgment (ECF No. 133) is **GRANTED**.

Dated at Milwaukee, Wisconsin, this 10th day of February, 2017.

    s/ Lynn Adelman

_____
LYNN ADELMAN
United States District Judge